## GREGG, Apt., *vs.* GREGG.

Where the bond of a guardian requires him to render an account in the probate court, when thereto required, if he die without having settled an account it is the duty of his executor or administrator to render his account.

In an accounting in the probate court, where the transactions are recent the accountant should state the items of the account; and, if required, should produce the proper vouchers and proof of the items.

The statute of limitations and mere lapse of time furnish no bar to the enforcement of the execution of a trust, or of an accounting by a guardian, in the probate court.

But lapse of time, without any claim or admission of an existing right, coupled with circumstances tending to show that a trust has been performed, may raise a presumption of its execution; and, in the case of a guardian, may authorize the court to require a less specific statement of the items of the account, and raise a presumption of payments to and for the ward to the amount. The natural presumption is very strong, where the guardian has lived a long time after the termination of the relation, without claim or acknowledgement, and the claim is made after his decease.

R. G. was appointed guardian of his minor children in 1795, and, as such, received certain property which came to them as heirs of their maternal grandfather, and gave bond to account in the probate court. E. G., a daughter, arrived at full age in 1811, but continued to reside with him the greater portion of the time during his life. There was evidence that he made some payments for her during her minority, and that she had been sick considerable. She had not been in any way disabled from prosecuting a claim against him; but it did not appear that she had ever made any claim upon him, nor was there any evidence that he had ever made any admissions of any indebtedness to her since that time. In 1841, after his death, she caused his executor to be cited to render an account of the guardianship, which he did, charging the estate with the sums received, and claiming the same amount as paid by the guardian during his lifetime on account of the trust.—*Held*, that after such a lapse of time, and

under such circumstances, the presumption was that the money received by him had been paid out and accounted for to the ward, and that the executor ought not to be required to state a more particular account.

APPEAL from the decree of the judge of probate. On the 8th of March, 1841, the appellant, Elizabeth Gregg, filed a petition in the probate office, setting forth that May 30, 1795, her father, Reuben Gregg, late of Deering, deceased, was appointed her guardian; that in pursuance of that appointment he received for her, out of the personal estate of her grandfather, Thomas Wilson, one fifth part of £133 6 s. 8 d., amounting to $88.92; her share, being one fifth of his real estate, amounting to $100, and her share of a pew, $5; that he had never rendered any account of his guardianship, or made any payments to her, during his life; and that Alexander Gregg, executor of his last will, had not rendered any account since his decease. Wherefore she prayed that the executor might be cited to render an account of the guardianship.

The executor appeared upon a citation, and rendered an account, in which the guardian was charged with the sums above mentioned, amounting to $193.92, and he claimed "that there be allowed, to balance the same, payments made by the said Reuben in his lifetime to her and on account of his trust," the same sum.

A hearing was had before the judge of probate, who, in his decree, recited, that it appeared that the said Elizabeth arrived at the age of twenty-one years in 1811, and had not since been in any way disabled from prosecuting her claim upon said Reuben; that she had resided with him a considerable portion of the time since the sums were received by him, and had been sick considerable; that it appeared that he made some payments on her account in 1801, though not to the amount received; that it did not appear that she ever made any claim upon him for either of the sums mentioned; that no evidence was offered of any acknowledgment by him of his indebtedness to her, as guardian, or in any other way, within thirty years past; or of any payment made by him to her as guardian, within that time; and that, from these facts, it was to be presumed that the several sums received by the guardian had been disbursed by payments by him

to her and on account of his trust. The judge thereupon decreed that the account, as rendered by the executor, be approved and allowed, and from this decree she took this appeal.

The bond of Reuben Gregg recited that he was appointed guardian of his five children, who were named, and stated to be heirs at law of Thomas Wilson ; and the condition was, in the common form, truly to perform the duty of guardian, to settle an account in the probate court, when thereto required by the judge of probate, and to pay over all sums found remaining in his hands.

*C. H. Atherton*, for the appellant. The decree of the judge seems to admit the support of the appellant as an offset. The question is, whether the judge was not in an error.

The presumption may be that the father, who is guardian of his child, does not intend to maintain the child who has property. But this is rebutted by the fact that he charges nothing. If he intended to exact payment, he should charge.

Then as to lapse of time. No trustee has the right to avail himself of presumption of payment, arising from lapse of time, unless he has kept an account. No time bars a direct trust as between *cestui que trust* and trustee, though a constructive trust may be barred by long acquiescence. 2 *Chitty's Digest* 1298, citing 17 *Ves.* 97, *Beckford* vs. *Wade.* Lapse of time cannot raise a presumption of payment, where the defendant admits it has not been paid. 1 *Chitty's Dig.* 646 ; 2 *Jac. & Walker* 223. The statute of limitations cannot be pleaded to a breach of trust. 2 *Chitty's Dig.* 1300 ; 4 *Price* 103, *Milnes* vs. *Cowley.*

If supported in these views, there is due to the petitioner the sums claimed, and such interest as the court shall allow.

*Brown*, for the appellee. The authorities do not apply in this case. After the appellant became twenty-one years of age, the guardian was no longer trustee. He gave bond, in effect, to settle an account or pay her. When she came of age, what he had in his hands was a debt due to her.

Gregg *v.* Gregg.

If in any case presumption of payment of a bond can be made, it applies in this case. The reason for the rule of presumption applies here. She had a remedy, by application for a settlement in the probate court. If she neglects to make use of the remedy the law gives her, it is the same as if she had the right of action herself. *Kinne's Quarterly Law Comp.* 212 ; 7 *Greenl.* 302, *Potter* vs. *Titcomb.*

*Atherton,* in reply. The limitation does not commence running until a settlement in the probate court or between the parties ; and that settlement must be proved, and not presumed, for it will not do to build one presumption upon another.

PARKER, C. J. No question arises in this case respecting the performance of the condition of the bond given by the guardian to account in the probate court. He was to render an account of his guardianship, when thereunto lawfully required. There is no evidence that he was required to do so in his lifetime. On his decease, it became the duty of his executor to render the account, if required ; and he has rendered one, which, being satisfactory to the judge of probate, has been allowed. The case of *Potter* vs. *Titcomb,* 7 *Greenl.* 302, 314, does not, therefore, apply.

The question whether this account ought to be allowed, comes before us upon the appeal. It is certainly not a specific account of items, such as ought to be required if the facts were recent ; for it contains only a general credit to balance the sums which it is admitted came into the hands of the guardian. Nor is the evidence in support of it such as would have been required had the account been rendered soon after the ward arrived at full age. In such accounting, when the transactions are recent, the accountant should state the items of the account ; and if required, should produce the proper vouchers and proof of the items. But in this case, a generation has passed away since the relation of guardian and ward existed ; the guardian himself has gone with his cotemporaries, and, unless we are compelled to require a detailed statement of the items, there is much in the case to show why we should not do so.

There is no doubt that it was competent for the guardian to apply the whole, or any part of the sums received, to the support of the appellant, during her minority, and to make payments to her after she became of age. And he had the right to have all these sums, so disbursed, allowed to him upon the rendition of his account. There is evidence to show that he did make some payments upon her account during her minority. The precise extent of these does not appear. She was in ill health likewise, and he had the right, had he been so disposed, to charge for her support and maintenance. These are circumstances showing affirmatively that he had, in fact, claims to be allowed to some extent; and it is under such circumstances that thirty years elapsed without any claim whatever on the part of the appellant, or any admission on the part of the guardian or his executor, that anything is due to her. This is wholly unexplained, except upon the supposition that it was understood between them that the sums received by the guardian had been, in fact, disbursed for or paid to the ward. The fact that she had been entitled to a share of the estate of her grandfather, and that her father was her guardian, could not well have been concealed from her knowledge; and, long before his death, supposing that to have taken place not many years before the present application, she was of an age to act and judge for herself. The influence of the guardianship had long since passed away, and that of the parent may well be supposed so far to have ceased, before she had completed her first half century, as that something would be heard of her rights, if she supposed she had any. If it was not understood that the account was balanced, there was a debt due to her. Not the less a debt because the guardian was bound to render an account, and have its amount ascertained in the probate court. If this had been a simple contract debt, upon which an action might have been maintained, the statute of limitations would have barred it four or five times over. If it had been due upon a bond directly to the appellant, the law would have raised a presumption that the obligation had been performed some ten years before this petition was preferred.

The question comes, then, whether there is anything in the

Gregg v. Gregg.

peculiar nature of this case which prevents the application of all the ordinary presumptions. It is argued that this, being a direct trust, no lapse of time will bar it and no presumption can arise against it. It is quite clear that the statute of limitations and mere lapse of time furnish no bar to the enforcement of the execution of a trust, or of an accounting in the probate court by a guardian. But we are of opinion that lapse of time, without any claim or admission of an existing right, coupled with circumstances which tend to show that a trust has been performed, may raise a presumption of its due execution, and that the appellee in this case is entitled to the benefit of that presumption, not only as authorizing the court of probate to require a less specific statement of the items of the account, but as evidence tending to raise a presumption of payment to and for the ward to the amount received. The presumption of a settlement is very strong where, as in this case, the guardian lived a long time after the termination of the relation, without claim or acknowledgment, and the claim is made after his decease.

The doctrine of the cases cited is not that there is no presumption of the performance, and execution of a trust, arising from lapse of time, connected with other circumstances which have a tendency to lead to a supposition of its execution, but merely that the statute of limitations, or lapse of time alone, cannot be set up in bar of a claim to have a performance of a direct trust, no evidence being offered to show its performance; whereas, if the trust be one arising from construction, as, for instance, from a conveyance in fraud of the party's rights, unless the relief be sought in a reasonable time, mere delay and lapse of time may be a sufficient bar. In *Beckford* vs. *Wade*, 17 *Ves.* 96, the master of the rolls says, " as our statute bars only legal remedies, of course it has no direct operation upon trusts ; for which there was no remedy but in courts of equity. But courts of equity, by their own rules, independently of any statutes of limitation, give great effect to length of time ; and they refer frequently to the statutes of limitation, for no other purpose than as furnishing a convenient measure for the length of time that ought to operate as a bar in equity of any particular demand.

"It is certainly true, that no time bars a direct trust, as between *cestuy que trust* and trustee; but, if it is meant to be asserted that a court of equity allows a man to make out a case of constructive trust at any distance of time after the facts and circumstances happened, out of which it arises, I am not aware that there is any ground for a doctrine so fatal to the security of property as that would be; so far from it, that not only in circumstances where the length of time would render it extremely difficult to ascertain the true state of the fact, but where the true state of the fact is easily ascertained, and where it is perfectly clear that relief would originally have been given upon the ground of constructive trust, it is refused to the party, who, after long acquiescence, comes into a court of equity to seek that relief."

Reference is there made at large by way of illustration to the case, *Bonney* vs. *Ridgard*. "It was a case where a testator had left leasehold property, with a direction to his executrix to sell it for the benefit of his children. His wife, who was his executrix, soon after his death married *Ridgard*, one of the defendants. He and she together mortgaged these infants' estate, in the first instance, I believe, for a *bonâ fide* consideration; they afterwards sold the equity of redemption to the defendant *Barnard*. The consideration for that purchase was not money paid, (except a small sum of six pounds,) but a debt due to *Barnard* from the husband of the executrix. This was in the year 1752. The youngest of the children, who, if this estate had not been improperly sold, would have been entitled to the produce of it, came of age in 1764. When the bill was filed is not stated, but Sir *Thomas Sewell's* decree was made in 1783. He was of opinion that it was a case of gross fraud and collusion between the executrix and the vendee of the estate; merely a trick, by which the estate was played into the hands of the purchaser, in payment of a debt of his own; and upon that ground he declared *Barnard*, the purchaser, was to be considered as a trustee for the children, and to account to them for the rents and profits. The case came before Lord *Kenyon* for a rehearing." His lordship was of the same opinion as to the character of the transaction, but held that

Gregg v. Gregg.

the claim was barred by lapse of time. The case is more fully reported 1 *Cox* 145. " There is another point," said his lordship, " upon which I must decide this cause, which is the length of time which has elapsed between the plaintiff's right occurring, and their prosecuting that right. The testator died in 1748 ; the youngest child came of age in 1764, and though I admit the statute of limitations does not affect trusts, yet this court, from a principle of convenience, has borrowed an analogy from that statute. The common case is that of mortgagor and mortgagee ; when mortgagee has been in possession for twenty years, without any impediment to the mortgagor, or if such impediment has been removed for ten years, it shall be a bar to the redemption. So in this case, I think the length of time ought to bar ; and if the authority did not say so, I would make the precedent, for this very case shews the policy of the rule. Here the many persons through whose hands this property has passed, have relied upon the undisturbed possession, and have laid out considerable sums of money in the improvement of it upon that idea. It would be too much at this length of time to give the plaintiffs the relief required, when the accounts cannot be taken. If these plaintiffs had made their claims when they all came of age, it would have been very different ; but upon the whole, weighing the convenience with the inconvenience, I think it right to say that the length of time is a bar in this case." 1 *Cox* 149. And the first part of the marginal abstract in *Christophers* vs. *Sparke,* 2 *Jac. & Walk.* 223, is " bill by mortgage for a sale under a trust for that purpose in the mortgage deed, dismissed upon doubtful evidence of title, and possession for twenty years without payment of interest, demand or acknowledgement."

Adopting the language of the authorities cited by the appellant, we may say that it would be too much at this length of time to give this appellant the relief she claims, of having a detailed statement of the items of the account, with the ordinary proofs and vouchers, when the accounts cannot be taken. If she had made the claim when she came of age, it would have been very different ; but upon the whole we think it right to say that the lapse of time, without payment of interest, demand, or acknowl-

edgment, connected with the facts stated in the decree of the judge, raises the presumption of payments and disbursements by the guardian in full, and that the appellant is not entitled to the rendition of a more particular account than that which has been allowed. See, also, 6 *Wheaton's R.* 481, *Prevost* vs. *Gratz.*

*Decree affirmed.*